UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BABETTE NICKLESS-PURCELL,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>THE RMR GROUP, LLC,<br><br>　　　　　　　　　　Defendant. | Case No. 24-cv-1718-BAS-DTF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF No. 5)** |

Presently before the Court is Defendant The RMR Group, LLC's ("RMR") motion to compel arbitration. (ECF No. 5.) Plaintiff Babette Nickless-Purcell ("Nickless-Purcell") opposed the motion. (ECF No. 7.) Defendant filed a reply. (ECF No. 11.) The Court finds the motion suitable for determination on the papers submitted. *See* Civ. L.R. 7.1(d)(1). For the reasons herein, the Court **GRANTS** Defendant's motion to compel arbitration.

**I. BACKGROUND.**

Defendant is an alternative asset management company focused on commercial real estate and related businesses. (Nickless-Purcell Decl. ¶ 5, ECF No. 7-2.) Plaintiff worked for Defendant as a director from 2012 to 2024. (*Id.*)

As a condition of her employment, Plaintiff signed a Mutual Agreement to Resolve Disputes and Arbitrate Claims ("Arbitration Agreement"). (Mot., Ex. A, ECF No. 5-3.) Plaintiff confirms that her signature appears on the Arbitration Agreement. (Nickless-

1  Purcell Decl. ¶ 9.) This Arbitration Agreement delegates to an arbitrator "[a]ll challenges
2  to the interpretation or enforceability" of the Arbitration Agreement. (Mot., Ex. A ¶ III, C.)
3     In 2024, Defendant terminated Plaintiff's employment at the company. (Compl. ¶
4  18, ECF No. 1-2.)
5     On August 6, 2024, Plaintiff filed this action in San Diego County Superior Court.
6  (Compl.) She brought six counts under California state law. (*Id.*) Plaintiff demanded a jury
7  trial. (*Id.* ¶¶ 1–3.)
8     Defendant timely removed the case to federal court, pursuant to 28 U.S.C. § 1332
9  diversity jurisdiction. (Notice of Removal, ECF No. 1.) Defendant then filed a motion to
10 compel arbitration, seeking both to compel arbitration and to dismiss Plaintiff's claims for
11 lack of subject matter jurisdiction and/or improper venue. (Mot. 1:13–15, ECF No. 5-1.)[1]
12 Plaintiff opposed enforcement, arguing that the delegation clause and the Arbitration
13 Agreement were unconscionable. (Opp'n 2:1–8, ECF No. 7.)[2] Defendant timely replied.
14 (Reply, ECF No. 11.)

**II. LEGAL STANDARD.**

The Federal Arbitration Act ("FAA") makes arbitration agreements "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA allows a party in the agreement to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The court's role is

---

[1] The parties dispute whether Defendant complied with this Court's Standing Order for Civil Cases § 4(A). The Court has reviewed the declarations and evidentiary objections relating to this dispute. The parties previously discussed settlement and Defendant notified Plaintiff it would move to compel arbitration. Thus, the Court finds substantial compliance with the Standing Order and declines to dismiss the motion for failure to comply. Nevertheless, for any future requests, the Court admonishes Defendant to more carefully comply with this Court's Standing Order for Civil Cases.

[2] Pursuant to Rule 201(b)(2) and (c)(2) of the Federal Rules of Evidence, Plaintiff asks this Court to take judicial notice of several documents and information in connection with her opposition to Defendant's motion to compel arbitration. (Request for Judicial Notice, 2:4–5, ECF No. 7-3.) The Court finds no need to take judicial notice of any documents or information to resolve the present matter and therefore denies as moot Plaintiff's request.

to enforce arbitration agreements "according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

**III. ANALYSIS.**

Defendant asks the Court to compel arbitration and enforce the Arbitration Agreement's delegation clause.

Parties can delegate challenges to the interpretation or enforceability of an arbitration agreement—a so-called "gateway question"—to an arbitrator. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation omitted); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce," therefore, "the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr.*, 561 U.S. at 70. The agreement's delegation must be made "clearly and unmistakably." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (citation omitted).

Here, there is no question that an agreement to arbitrate exists. And the delegation clause is clear and unmistakable.

Instead, Plaintiff challenges enforcement on state-law unconscionability grounds. First, Plaintiff argues that the Arbitration Agreement's delegation clause is unconscionable. (Opp'n 8:7.) Second, Plaintiff argues that the entire Arbitration Agreement is unconscionable. (Opp'n 12:17.) The Court will consider each argument in turn.

**A. The Court Will Apply California Law for Its Unconscionability Analysis.**

The Arbitration Agreement has a Delaware choice-of-law provision. Plaintiff argues California law should apply. (Opp'n 6:16.) Defendant maintains the applicability of Delaware law. (Mot. 4:22–24; Reply 2:27 n.2.)

A court resolves a choice-of-law issue in a diversity case by applying the "choice-of-law rules of the state in which it sits." *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Applying California's rules for contractual choice-of-law provisions, this Court first asks

whether Delaware has a "substantial relationship to the parties or their transaction" or whether there exists "any other reasonable basis for the parties' choice of law." *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465–66 (1992) (stating that if "neither of these tests is met" then "the court need not enforce the parties' choice of law"). The answer is no.

Here, Plaintiff is a California resident. (Nickless-Purcell Decl. ¶ 3.) She lived and worked in California during her relevant employment. (*Id.*) Defendant is headquartered in Massachusetts and incorporated in Maryland. (Notice of Removal ¶ 4.) Given that Plaintiff is a California employee, California has a materially greater interest in seeing its laws applied.

Defendant has failed to argue that Delaware has an interest in the application of its laws. The Court will thus apply California law throughout its unconscionability analysis of the delegation clause.

**B. The Delegation Clause Is Enforceable.**

Under the FAA, an arbitration agreement can be unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Looking to state law, these "contract defenses" can include "fraud, duress, or unconscionability," but cannot include defenses that "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).

If a party challenges the delegation clause as unenforceable, that party must challenge "the delegation provision specifically." *Rent-A-Ctr.*, 561 U.S. at 72. Moreover, while the challenge can point to common procedures throughout the arbitration agreement, the party must show how "common procedures *as applied* to the delegation provision rendered *that provision* unconscionable." *Id.* at 74; *see also Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009–10 (9th Cir. 2023).

Here, Plaintiff has challenged the unconscionability of the delegation clause with sufficient specificity.

An unconscionable contract has two elements: first, procedurally, "one of the parties lacked a meaningful choice in deciding whether to agree" and second, substantively, "the contract contains terms that are unreasonably favorable to the other party." *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 492 (2024) (quotations omitted). A party that challenges a contract's conscionability carries the burden of proof. *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015). That party must show both procedural and substantive unconscionability, but both "need not be present in the same degree." *Id.* (quotation omitted).

Here, Plaintiff can demonstrate some procedural unconscionability but cannot show substantive unconscionability.

### 1. Procedural Unconscionability.

One shows procedural unconscionability by demonstrating "oppression or surprise due to unequal bargaining power." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012) (citation omitted).

First, oppression: a contract is oppressive when there is a "lack of negotiation and meaningful choice." *Id.* at 247 (quotation omitted). Adhesive contracts, by their nature, lack negotiation and meaningful choice. *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) (noting that a contract of adhesion is "procedurally unconscionable to at least some degree"). The oppression of an adhesion contract is particularly acute in a preemployment arbitration agreement. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 115 (2000) ("[T]he economic pressure exerted by employers on all but the most sought-after employees may be particularly acute […] few employees are in a position to refuse a job because of an arbitration requirement.").

Here, the Arbitration Agreement is an adhesive contract. The Arbitration Agreement mentions the phrase "as a condition of your employment" several times. (Mot., Ex. A.)

1  Plaintiff was given no opportunity to negotiate or amend the arbitration agreement. In fact, Defendant's reply brief stated: "Plaintiff had the ability to decline the position with RMR if the terms in the offer letter, including the arbitration terms, were unacceptable to her." (Reply 4:20–22.) The Court assumes Plaintiff faced economic pressure to take the job as offered.

Courts also find oppression where the employee did not have adequate means to review the paperwork. *See Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1090 (9th Cir. 2024) (noting that the company pushed the employee "to sign the contract immediately, on site"). Plaintiff and Defendant put forth competing timeframes regarding the Arbitration Agreement's signing deadline.[3] The Court assumes Defendant gave Plaintiff an overnight mailing deadline. Requesting a same-day return leans toward oppression but does not rise to the level of on-the-spot signatures.

Thus, the Court finds some grounds for oppression.

Second, surprise: Plaintiff states that the "[delegation] clause is buried on page 4 of the [Arbitration] Agreement under the unassuming title 'Applicable Law and Construction/Waiver of Jury Trial.'" (Opp'n 4:19–20.) Moreover, Plaintiff argues that "Defendant did not explain the meaning or significance of this [delegation] clause[.]" (Opp'n 9:27–10:1.)

---

[3] Plaintiff's Declaration states that one of Defendant's employees told her they "would be mailing [her] a package of documents that [she] would need to sign before [her] employment commenced." (Nickless-Purcell Decl. ¶ 7.) She was further instructed "to sign and return these documents via overnight mail per company policy." (*Id.*) Plaintiff states that she "signed all documents sent to [her], and returned those documents to Defendant before [her] employment began," without mentioning how many days later. (*Id.* ¶ 8.)

In response, Defendant provides the Court with Plaintiff's offer of employment, which states: "Please indicate your acceptance of the terms of the offer by signing this document along with the Mutual Agreement to Resolve Disputes and Arbitrate Claims (Agreement)." (Mariconti Decl. ¶ 6, Ex. D, ECF No. 11-2.) The offer letter then instructs Plaintiff to email the paperwork back as a PDF attachment "within two business days of receipt." (*Id.*)

Plaintiff objects to the introduction of the offer letter through an evidentiary objection. (ECF No. 12.) The Court will allow the evidence, given that Defendant introduced this evidence in response to Plaintiff's opposition and Defendant cured any evidentiary issues through the Declaration of Diane Proctor. (Proctor Decl. ¶ 3, ECF No. 13-1.)

Courts find surprise "where the allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle*, 55 Cal. 4th at 247 (citation omitted). Surprise can also manifest in "opaque" language, for example, language that is "complex" or "filled with statutory references and legal jargon." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 128 (2019). But an employer is under "no obligation to highlight the arbitration clause of its contract," nor is it "required to specifically call that clause to [the employee's] attention," in light of the FAA. *Sanchez*, 61 Cal. 4th at 914 (citation omitted).

Here, Plaintiff was given a separate, 7-page arbitration packet, with an overview cover page. *See Ali v. Daylight Transp., LLC*, 59 Cal. 5th 462, 474 (2020) (describing the arbitration provision as "appearing near the end of a 15-page contract" where "the arbitration provision is the 27th of 39 clauses contained within the Agreement" and was buried in "the second of three clauses" under the title "'Administrative and Related Matters'"). Moreover, this Arbitration Agreement is readable both regarding text and prose. *See Heckman v. Live Nation Ent., Inc*., 120 F.4th 670, 683 (9th Cir. 2024) (describing the arbitration agreement as "so dense, convoluted, and internally contradictory" as to be "borderline unintelligible") (citation omitted)). While the section heading of the delegation clause could have been clearer, Defendant did not hide the provision, and Defendant had no obligation to highlight it.

Thus, the Court finds minimal to no grounds for surprise.

Accordingly, given the contract's adhesive nature along with oppression, the Court finds some procedural unconscionability.

But some procedural unconscionability is not enough. Although adhesion contracts are "subject to scrutiny" given their characteristically oppressive nature, they "remain valid and enforceable unless the resisting party can also show that one or more of the contract's terms is substantively unconscionable or otherwise invalid." *Ramirez*, 16 Cal. 5th at 492–93. Hence, the Court must assess the degree of substantive unconscionability before determining whether any provision is unenforceable.

## 2. Substantive Unconscionability.

Plaintiff argues that the delegation clause is substantively unconscionable because of the fee-shifting and the choice-of-law provision. One identifies substantive unconscionability by examining the "fairness of an agreement's actual terms." *Pinnacle*, 55 Cal. 4th at 246 (citation omitted). Substantive unconscionability can emerge in various forms, but one generally looks for "terms that are 'unreasonably favorable to the more powerful party.'" *Sanchez*, 61 Cal. 4th at 911 (quotation omitted).

First, the fee-shifting provision. The Arbitration Agreement states that "[t]he Company will pay 100% of the Arbitration Firm's fees as well as the arbitrator's fees and expenses," including "100% of any filing fees that the Arbitration Firm may charge to initiate arbitration." (Mot., Ex. A ¶ B, iv.) However, "each party shall otherwise bear its own costs and fees associated with the arbitration," which include "attorneys' fees and the costs and fees of responding to discovery requests." (*Id.*) Further down, the Arbitration Agreement allows the arbitrator to award attorney's fees when required by law. The Arbitration Agreement states: "The arbitrator may award reasonable attorneys' fees and expenses only if expressly required by an applicable statute or law." (*Id.* ¶ B, vi.) Also, the arbitrator may award attorney's fees if it would be unconscionable not to do so, stating: "[T]he arbitrator may award attorneys' fees and expenses to either party only if the arbitrator determines that a failure to award attorneys' fees and expenses would be unconscionable under applicable law." (*Id.*) This Arbitration Agreement thus creates the possibility, if required by law or given a finding of unconscionability, for Plaintiff to bear the costs of attorney's fees. Plaintiff argues that this possibility makes the delegation clause unconscionable.

California case law seeks to protect employees entering adhesion contracts from incurring "any *type* of expense" in arbitration that would not be required in court. *See Armendariz*, 24 Cal. 4th at 110–11 (cautioning that when an employer mandates arbitration as a "condition of employment" then the arbitration agreement "cannot generally require

the employee to bear any *type* of expense that the employee would not be required to bear" if the action was brought "in court").

Plaintiff cites to the case *Lim v. TForce Logistics, LLC*, for support. 8 F.4th 992 (9th Cir. 2021). In *Lim*, the court held the delegation clause substantively unconscionable in part because of a fee-shifting provision that awarded attorney's fees to the prevailing party. *Id.* at 1003. The likelihood of paying for attorney's fees created a deterrence or "chilling effect" on employees; a fear that would not bear out in court. *Id.* But this case is different from *Lim*. This Arbitration Agreement does not award fees according to the prevailing party. Instead, the arbitrator can award attorney's fees "only if" required by law or when demanded by an unconscionability analysis under state law. (Mot., Ex. A ¶ B, vi.)

Here, limiting attorney's fees to the boundaries of state law is substantively acceptable and consistent with *Armendariz*. *See also Zamudio v. Aerotek, Inc.*, 733 F. Supp. 3d 931, 945 (E.D. Cal. 2024) ("[T]he arbitration agreement does not allow for award for attorneys' fees unless otherwise authorized by the statute at issue [and is thus] consistent with the California Supreme Court's mandate in *Armendariz*, as it does not impose any expense beyond what a party would be required to bear if she were free to bring the action in court.").

Second, the choice-of-law provision. The Arbitration Agreement elects Delaware law for arbitrability issues: "[A]ll disputes regarding the enforcement of this Agreement, any of the provisions of this Agreement or whether a party's claim is subject to this Agreement shall be determined in accordance with the law of the State of Delaware." (Mot., Ex. A ¶ III C.)

But the Arbitration Agreement also states that "the arbitration shall be conducted in accordance with [the National Arbitration and Mediation's ("NAM")] then current rules for the resolution of employment disputes." (*Id.* ¶ 4.) According to these NAM rules, "[t]he Arbitrator shall apply the substantive law of the state in which the Employee is, was, or sought to be predominantly employed." National Arbitration and Mediation, *Employment Rules and Procedures* (Sept. 18, 2019).

1. The parties dispute the relevance of *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. 4th 227, 246 (2015). In *Pinela*, the court found the delegation clause, which contained a choice-of-law provision, both substantively and procedurally unconscionable. *Id.* at 250. One can distinguish *Pinela* from the present case. First, this Arbitration Agreement lacks language stripping power from the arbitrator to change the applicable law. *Id.* at 248. Second, this Arbitration Agreement's choice-of-law provision lacks complexity. *Id.* at 244 (noting that the choice-of-law provision was not "a simple election of Texas rather than California law" but "more exotic" because "where federal claims or defenses are at issue, Fifth Circuit law will govern"). *Ronderos* is similarly inapplicable. 114 F.4th at 1092; (Opp'n 10:19–20). The *Ronderos* court used the "ambiguity of the cost-splitting provision, coupled with the choice-of-law provision" to establish procedural unconscionability's element of surprise. 114 F.4th at 1092.

Thus, neither the fee-shifting nor the choice-of-law provision rises to the level of substantive unconscionability.

The Court is nonetheless concerned with Defendant's use of Delaware choice-of-law, given the "absence of justification for it." *See Armendariz*, 24 Cal. 4th at 117–18 (discussing how the lack of a "reasonable justification" for a provision can make "arbitration appear[] less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage") (quotation omitted) (citation omitted). In *Pinela*, the delegation clause contained a Texas choice-of-law provision, and Neiman Marcus was headquartered in Texas. 238 Cal. 4th at 233, 243. Here, Defendant has shown no basis for why Delaware choice-of-law should apply.

But the choice-of-law provision is unlikely to have an impact because California law, the NAM Rules, and Delaware law point to the applicability of California law. Here, the NAM Rules instruct the arbitrator to apply California substantive law because Plaintiff was a California employee. California's choice-of-law rules are part of the state's "substantive law." *See, e.g.*, *Klaxon*, 313 U.S. at 496. So, too, are California's rules on the unconscionability of contracts. *See, e.g., Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 419

(N.D. Cal. 2015). And it is hard to fathom how the Delaware choice-of-law provision would be enforceable, even under Delaware law. *See Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1047 (Del. Ch. 2006) (explaining that Delaware law "allows the law of the state chosen by the parties to govern contractual rights and duties" unless the state chosen "lacks a substantial relationship to the parties or transaction"). Here, neither party nor transaction has a connection to Delaware.[4]

In conclusion, this choice-of-law provision does not rise to the level of unfairness seen in *Pinela*, and it is unlikely that it will have an impact on the arbitration because California law, the NAM Rules, and Delaware law all point to California law in these circumstances.

### 3. Severance.

Since there are no unconscionable provisions in the delegation clause, the Court declines to sever any provision or invalidate the entire Arbitration Agreement pursuant to California Civil Code § 1670.5(a).

### C. The Whole Arbitration Agreement Shall Be Reviewed by The Arbitrator.

"By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

Given that it will enforce the delegation clause, the Court declines to analyze Plaintiff's remaining arguments; namely, that the entire Arbitration Agreement is unconscionable, pointing to the shortened statute of limitations, discovery restrictions,

---

[4] The Arbitration Agreement allows the arbitrator to sever the choice-of-law provision if it is unenforceable. The severance provision states: "In the event that any provision of this Agreement shall be construed to be unlawful or unenforceable, and if the offending provision can be deleted without affecting the primary intention of the parties or can be reformed to effect the primary intention of the parties as expressed herein, then the offending provision shall be so deleted or reformed and the remainder of this Agreement shall remain in full force and effect as written." (Mot., Ex. A, ¶ III, C.)

limits on legal representation, limits on evidence, waiver of jury trial, and more. Plaintiff may raise these unconscionability challenges to the arbitrator.

## IV. CONCLUSION.

The Court will **GRANT** Defendant's motion to compel arbitration. (ECF No. 5.)

The Court **ORDERS** the parties to proceed to arbitration in California in the manner provided for in the Arbitration Agreement. *See* 9 U.S.C. § 4. The Court will **STAY** the case pending arbitration.

Lastly, the Court directs the Clerk of Court to **ADMINISTRATIVELY CLOSE** this case. The decision to administratively close this case pending resolution of the arbitration does not have any jurisdictional effect. *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[A] district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing.").

**IT IS SO ORDERED.**

**DATED: September 29, 2025**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**